STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| In re: Appeal of Lussier | } | Docket No. 121-6-05 Vtec |
| (Rt. 114 Gravel Pit - Lyndon) | } | |

<u>Decision and Order on Appellant-Applicants' Motion for Summary Judgment
and Motion to Strike Affidavits</u>

Appellant-Applicants Roger and Evelyn Lussier appealed from a decision of the District 7 Environmental Commission (District Commission) denying their Act 250 permit application for a gravel pit extraction operation in Lyndon, Vermont. Appellant-Applicants are now represented by Tiffany L. Young, Esq.; the Vermont Agency of Natural Resources (ANR) is represented by Catherine Gjessing, Esq.; the Land Use Panel of the Vermont Natural Resources Board is represented by Melanie Kehne, Esq.

Appellant-Applicants moved for summary judgment on Question 5 of their Amended Statement of Questions, regarding whether their application should be granted by operation of law due to what they characterize as "inordinate delay" in the issuance of a decision by the District Commission. Appellant-Applicants also moved to strike the affidavits of ANR District Fisheries Biologist Len Girardi, and ANR River Management Engineer Barry Cahoon.

<u>Motion to Strike</u>

Appellant-Applicants move to strike the affidavits of ANR District Fisheries Biologist Len Girardi and ANR River Management Engineer[1] Barry Cahoon. Each affidavit

---

[1] The position was formerly entitled "Stream Alterations Engineer."

1

contains a brief description of the affiant's position and a statement that his responsibilities include the review of Act 250 applications to assess the "potential impacts of proposed development" within that affiant's area of responsibility. Neither affidavit includes a resume of the affiant's education or experience in his respective field. Paragraph 3 of each affidavit includes the statement that "[t]he comments and concerns that I expressed with respect to Application #7C1152 are accurately represented in the District Commission Decision," and that "[t]hese concerns remain accurate today based on the information I have received to date" regarding Appellant-Applicants' proposed extraction activity.

Appellant-Applicants move to strike the affidavits on the grounds that neither individual has expressed any opinions in the terms necessary for admission of expert testimony, and arguing that the fact that they may have 'concerns' is not relevant. The Motion to Strike the affidavits is DENIED in Part, as to paragraphs 1 and 2 and the first sentence of paragraph 3 of each affidavit, but is GRANTED in Part only as to the second sentence of paragraph 3 of each affidavit.

In the context of the motions for summary judgment on Question 5 of the Amended Statement of Questions, the allowed portions of the affidavits are not submitted for the truth of the affiants' comments or concerns, but instead are submitted to establish what the affiants' comments and concerns were, and the dates on which they were submitted to the District Commission. The legal issue before the Court on summary judgment is not whether Appellant-Applicant's permit should be granted on its merits; that is, whether it qualifies under the Act 250 criteria for approval, but whether the uncontested sequence of events should result in the approval of the permit by operation of law, due to delay. If and when we reach the merits of the application, those witnesses may be called to testify about the merits of the proposal, and we would take up any issues regarding their expertise at such time as it is put in issue at the trial.

2

Motion for Summary Judgment

The following facts are undisputed unless otherwise noted.

Appellant-Applicants Roger and Evelyn Lussier own a gravel pit and commercial gravel extraction operation located on approximately one hundred acres of land ("the property") adjacent to Vermont Route 114 in the Town of Lyndon.

In 1985, the Act 250 District 7 Coordinator[2] (District Coordinator), wrote a letter to confirm his then-recent conversation with Appellant-Applicant Roger Lussier regarding the gravel pit "being operated off Route 114 in Lyndon across the river from the town garage." The letter stated the District Coordinator's opinion that "the pit is a 'pre-existing' operation which is exempt from Act 250," but noted that "a substantial change to the pit may trigger an Act 250 review at some point in the future." The letter described the types of increases in the size of the excavated area or the rates of excavation that might constitute a "substantial change," and advised that Mr. Lussier should contact the office if at any time he anticipated such an increase.

In 1995, Appellants opened a new pit on the property, located approximately one-quarter mile northerly of the pre-existing pit described in the 1985 letter, and adjacent to the West Branch of the Passumpsic River, between the river and a Class II wetland. Some excavation occurred within fifteen feet of the river.

On August 10, 2001, the District Coordinator[3] issued a Notice of Alleged Violation to Appellant-Applicants for "opening a gravel pit operation without an Act 250 permit." The Notice of Alleged Violation contained compliance directives which required Appellant-Applicants to cease all gravel extraction and operation at the site until an Act 250

_____

[2] At that time, Craig Whipple.

[3] At that time and through the remaining events described in this motion, Charles J. (Chuck) Gallagher.

3

permit application had been filed, to file such an application no later than[4] September 7, 2001, to immediately reclaim the stream bank in accordance with directions from the District Coordinator, to complete an emergency berm (to protect exposed tree roots along a portion of the stream bank) by August 24, 2001, and to enter into an Assurance of Discontinuance as prepared by the District Coordinator.

On March 25, 2002, the District Coordinator issued a Project Review Sheet to Appellant-Applicants; it contained a notice that "[t]his is a jurisdictional opinion based on available information," and that "[a]ny notified party . . . may appeal to the Environmental Board (Act 250) within 30 days of the issuance of this opinion." It asserted Act 250 jurisdiction based on the "annual mining of thousands of yards of gravel at a <u>new</u> <u>distinct</u> <u>site</u> on a tract of land in Lyndon, Vermont. Site opened roughly three years ago, adjacent to the river, involves steep slopes."

The District Coordinator sent the Project Review Sheet to Appellant-Applicants under cover of a two-page letter also dated March 25, 2002, outlining the history of the site, the work done in the fall of 2001 to stabilize the site and to "insure that the gravel stockpiled on site could continue to be accessed by the towns that have contracted with you." It alluded to an on-site inspection and meeting held on March 13, 2002, and to Appellant-Applicants' "concern that Act 250 might not apply" to the property. It outlined the District Coordinator's reasoning for believing that Act 250 jurisdiction attached when the "new, separate and distinct operation" was opened.

The March 25, 2002 letter reiterated Appellant-Applicants' right to appeal the jurisdictional opinion to the Environmental Board, and described the other options

---

[4] As of their entry into the Assurance of Discontinuance nearly three years later, in June of 2004, they had complied with all the directives of the Notice of Alleged Violation; however, their first filing of an application for the Act 250 permit appears to have occurred in May of 2002.

4

discussed at the March 13, 2002 meeting, including "filing for an Act 250 permit, in which case you would need to develop an accurate site plan and reclamation plan for the site, or filing for an Act 250 permit while at the same time, appealing jurisdiction." The letter closed with a reminder that the "attached jurisdictional opinion (PR Sheet) must be appealed within 30 days should you decide to file an appeal.

Appellant-Applicants did not appeal the March 25, 2002 jurisdictional opinion. Instead, on May 23, 2002, Appellants filed application #7C1152 for an Act 250 permit. Neither the application nor the attached exhibits (listed at page 7 of the decision on appeal in the present case) have been provided to the Court in connection with the pending motions. From that listing, it appears that two contour maps, prepared in April of 2002 by Appellant-Applicants' engineer Donald Grady, accompanied the application. On June 18, 2002, the District Commission conducted a site visit and a hearing on Appellant-Applicants' permit application. Written comments of the "ANR Review Committee" dated June 18, 2002, were also received as an exhibit but have not been provided to the Court in connection with the present motions; we cannot determine whether these 2002 comments included comments from Mr. Cahoon or from Mr. Girardi.

On July 11, 2002, the District Commission issued a Hearing Recess Order. It described the "unusually difficult site;" the erosion and siltation of the site during recent storm events, including that two sections of the haul road had been "blown out" by flood water; the surrounding wetlands; and the location of the gravel-containing esker surrounded by the river itself or by the old riverbed "which holds and carries water during storm events." The 2002 Hearing Recess Order informed Appellant-Applicants that, "should they wish to proceed with the application," certain specified "additional minimum information will be required." The order required the additional information to be filed within sixty days, unless an extension were to be requested in writing on or before the sixtieth day, and warned that "if the hearing is not reconvened, the Commission will set

5

a date for adjournment and issue a final decision based upon the record and following a full deliberation of the issues." It also advised Appellant-Applicants that if they were to elect not to pursue a permit to operate, the Commission would "accept a site restoration plan for review and approval."

The required additional minimum information was listed in detail and consisted of seven items: (1) a report and site plan/map from a qualified hydrologist or engineer experienced in stream and hydrodynamics, identifying the flood plain and floodway areas and assessing the future hydrologic and site impacts that could occur from past and future excavation as proposed, as well as an assessment of the final reclamation plan, potential flood water impacts from the plan, and the proposed final site reclamation; (2) a detailed site reclamation plan; (3) a detailed stream bank restoration plan; (4) a complete wetlands delineation by a wetlands specialist identifying all Class II and Class III wetlands and mapping the 50-foot buffers to those wetlands on the site plan; (5) an integrated operations site plan reflecting all wetlands, flood plain, and floodways, and showing 50-foot and 100-foot buffers to the river and 50-foot buffers to all on-site wetlands; (6) a detailed operations plan and detailed narrative identifying all areas to be utilized for excavation, storage of materials, haul roads, crushing, and topsoil and stump piles; and (7) a reclamation plan outlining the final site contours, revegetation, elevations, and restoration, with a narrative analysis of how the site will function and remain stable during future storm and flood events.

By issuing the 2002 Hearing Recess Order the District Commission did not close the hearing at that time, but rather recessed it to allow Appellant-Applicants to complete the application to allow it to be ruled on on its merits by the District Commission. If the District Commission had closed the hearing after the June 2002 hearing and site visit, it would have had to have denied the application due to the lack of the required information listed in the 2002 Hearing Recess Order.

6

Appellant-Applicants did not supply any of the requested information, reports or plans, nor did they request an extension of time by the September 2002 deadline. Accordingly, the District Coordinator pursued the enforcement process begun by the 2001 Notice of Alleged Violation.

On March 8, 2004, Appellant-Applicants' engineer, Donald Grady, submitted a revised contour map. On June 1, 2004, Appellant-Applicants entered into an Assurance of Discontinuance with the Environmental Board, settling the Act 250 violations at the site and recognizing that Appellant-Applicants had complied with the directives of the August 2001 Notice of Alleged Violation and had not extracted gravel from the site since complying with those directives.

The Assurance of Discontinuance was entered as an order of the Environmental Court (the Assurance Court Order) on June 11, 2004, as Docket No. 90-6-04 Vtec. It laid out the future steps to be taken by Appellant-Applicants, including establishing an escrow fund or bond to ensure reclamation of the site, and providing the District Commission with the necessary information required by the 2002 Hearing Recess Order so that it could proceed to consider the permit application on its merits. It required the proposed reclamation plan to be consistent with the requirements outlined in the 2002 Hearing Recess Order and required it "to be developed in consultation with the appropriate staff of [the] Agency of Natural Resources." The Assurance Court Order allowed Appellant-Applicants, upon establishing the escrow or posting the bond, to proceed to crush and sell stone that had been previously extracted. On June 10, 2004, Appellant-Applicant Roger Lussier established the escrow account.

The Assurance Court Order required Appellant-Applicants to "continue to use their best efforts to gain an Act 250 permit for the Project," and required them to submit "[a]ll additional information and materials required" by the 2002 Hearing Recess Order by July 15, 2004, "so that the reclamation plan may be reviewed in concert with future excavation

7

plans."

On June 24, 2004, Appellant-Applicants' engineer, Donald Grady, resubmitted the April 2002 contour map and submitted two new large, hand-drawn maps dated June 15, 2004, entitled "Reclamation Plan" and "Operations Plan." On August 5, 2004, the District Commission reconvened the hearing and held a second hearing on the application.

The Assurance Court Order had required the proposed reclamation plan to be "developed in consultation with the appropriate staff of [the] Agency of Natural Resources." In any event, ANR comments are filed on Act 250 applications of concern to the ANR, as may be seen from the fact that ANR "Review Committee" comments were submitted in connection with the 2002 hearing. Accordingly, soon after the August 5, 2004 hearing, on August 9, 2004, ANR Stream Alterations Engineer Barry Cahoon submitted written comments by email on the plans submitted by Appellant-Applicants in support of the application, and on August 12, 2004, ANR District Fisheries Biologist Len Girardi submitted written comments on the plans submitted by Appellant-Applicants in support of the application. The Commission staff sent copies of these comments to Appellant-Applicants in accordance with its general practice.

As described in the decision on appeal, Mr. Cahoon's comments noted that "the site is constrained by wetlands, wetland buffers, the river and stream buffers essentially on all four sides," and expressed concerns regarding proposed roads in the riparian buffer, inadequate erosion control, and inadequate control of or planning for lateral migration of the river channel. As described in the decision on appeal, Mr. Girardi's comments expressed concerns regarding proposed roads to be constructed on both sides of the river; the lack of screening for the project; and the impacts of dust, erosion, sedimentation, and potential bank failure on the trout population and other aquatic biota of the river.

In response to these comments, on about September 1, 2004, Appellant-Applicants' engineer, Donald Grady, submitted a revised "site operations and sequencing plan,"

consisting of revisions to the two plans submitted on June 24, 2004. The District Coordinator sent copies of or showed the plans to Mr. Cahoon and Mr. Girardi, as the engineer's submittal did not reflect whether he had sent anyone a copy.

Appellant-Applicant Roger Lussier inquired of the District Coordinator on September 15, 2004 about the expected timing of the District Commission's decision, as he planned to bid on providing material from the pit to municipalities in the winter of 2004-2005. In response to that inquiry, on September 16, 2004, the District Coordinator wrote a letter to Appellant-Applicant Roger Lussier reiterating that he could crush and remove previously extracted material under the Assurance Court Order, but that he should not bid on jobs to sell newly excavated material until an Act 250 permit decision had been reached. He stated that the "District Commission has not yet had time to deliberate on the plan changes submitted on September 2nd by your engineer Don Grady. Whether or not these changes satisfy the expressed concerns of the Agency of Natural Resources as outlined in letters from Barry Cahoon and Len Gerardi is yet to be seen." He stated that he would get back to Mr. Lussier by the following Friday with "a comprehensive status report if not a final decision."

On September 21, 2004, ANR Stream Alterations Engineer Barry Cahoon submitted written comments by email on the revised plans submitted by Appellant-Applicants on or about September 1, 2004. Mr. Cahoon expressed his continuing concern regarding the lack of detail provided, and gave specific comments on the proposed construction of a road that would entail a significant cut into the embankment; the placement of settling ponds within the 75-foot riparian buffer; the volume and dimension calculations for the capacity of the "hole in the southeast corner;" the overburden volume calculations; a proposed berm to prevent the migration of the river channel; a proposed equalizer pipe under the pit road and whether it would require other permits; and certain confusing notes on the plans. The Commission staff sent copies of these comments to Appellant-Applicants in accordance

9

with its general practice.

Thus, as of late September 2004, Appellant-Applicants, or at least their engineer, knew that their submittals did not satisfy the 2002 Hearing Recess Order, and knew that, to comply with the Assurance Court Order, at least the reclamation plans had to be developed in consultation with the ANR staff. Appellant-Applicants, or at least their engineer, knew that they were being given repeated opportunities to come in with more information and more complete plans, and availed themselves of that opportunity.

However, rather than submitting more complete engineering information addressing the Cahoon and Girardi issues, Appellant-Applicants must have contacted their state senator Bernier L. Mayo, as he wrote a letter to the District Coordinator received on October 26, 2004, complaining of the delay in the issuance of the Act 250 permit. The District Coordinator responded the following day by a three-page letter to Senator Mayo. The letter explained the context of the permit application as an after-the-fact application to resolve a violation, that Mr. Lussier had had approval all along to crush and sell the already-excavated material, and that the District Coordinator had sought site reclamation rather than a substantial penalty, even though the removal of material within the riparian buffers would not have been allowed if a permit had been sought before the material had been excavated. He explained the site difficulties and the difficulties with obtaining the "application materials requested but never received." The District Coordinator concluded his letter by stating that, "[g]iven my Commission's past success in tough circumstances, I have been reluctant to close this file," but that he had spoken to Appellant-Applicant Roger Lussier that morning and "alerted him that we would be sending him a decision denying the application for further extraction at this site." He characterized the conversation as a "good conversation" and that he had "agreed to help [Mr. Lussier] go over his responsibilities for continued site reclamation" and his appeal rights "should he choose to explore this option."

10

District Coordinator Gallagher recalled generally that he had one or more additional conversations with Mr. Lussier, Mr. Lussier's assistant Dave Turner, or Appellant-Applicants' engineer Donald Grady after October 27, 2004, from which he understood that Appellant-Applicants "felt that they could provide additional information that could satisfy the Commission's concerns for the project" and wished to do so. However, in fact Appellant-Applicants provided no additional information to the Commission after October 27, 2004. Appellant-Applicants did not respond to the review and written comments submitted by Mr. Cahoon on September 21, 2004 or submit anything other than the September 1, 2004 plan revisions in response to the review and written comments submitted by Mr. Girardi.

The District Commission closed the hearing, concluded its deliberations, and issued its decision denying the application on May 27, 2005. The denial was based on the ground that Appellant-Applicants had "failed to show how continued excavation of the site for gravel extraction can proceed without further damage and undue impact on the West Branch of the Passumpsic River and adjoining wetlands." In issuing its denial, the Commission noted that "our original [2002] Recess Order request for information on the site from a qualified hydrologist was never met. Nor has the Applicant presented the wetlands delineation from a wetlands specialist. To date, like the ANR reviewers, we are disappointed with the level of detail of both the operations plans and the proposed reclamation plans."

Appellant-Applicants argue that this Court should impose a so-called "deemed approval" remedy under 10 V.S.A. §6085(f) in the circumstances of the present case. They argue that the decision had actually been made by the District Commission as of the District Coordinator's October 27, 2004 letter, so that seven months elapsed between the conclusion of deliberations and the issuance of the written decision.

11

Section §6085(f) states in full:

A hearing shall not be closed until a commission provides an opportunity to all parties to respond to the last permit or evidence submitted. Once a hearing has been closed, a commission shall conclude deliberations as soon as is reasonably practicable. A decision of a commission shall be issued within 20 days of the completion of deliberations.

In fact, the District Commission did not officially close or adjourn its hearing until May of 2005, when it registered its deliberations as having been concluded and issued its written decision. That is, after the October 27, 2004 letter, the District Commission held the hearing open to allow Appellant-Applicants the opportunity to respond to the Cahoon and Girardi comments and to provide all the materials still missing, as required by the 2002 Hearing Recess Order and the 2004 Assurance Court Order. In the context of the three-year effort beginning in August of 2001 to encourage Appellant-Applicants to submit the necessary supporting materials for their permit application, the fact that the District Coordinator told Mr. Lussier in late October of 2004 that a decision would issue denying the application carried the clear implication that it would be denied unless Appellant-Applicants could come forward with the missing supporting materials. Appellant-Applicants understood this implication, as they or their engineer or agent expressed to the District Coordinator their preference for avoiding such a denial and their ability and desire to "provide additional information that could satisfy the Commission's concerns for the project." The hearing was held open for that purpose. The fact that Appellant-Applicants failed to provide any additional information does not constitute undue or unwarranted delay on the part of the Commission under 10 V.S.A. §6085(f).

Rather, §6085(f) requires that a "hearing shall not be closed until a commission provides an opportunity to all parties to respond to the last permit or evidence submitted." The last evidence submitted to the Commission (in late September of 2004) was Mr.

12

Cahoon's review and comments in response to Appellant-Applicants' revised site operations and sequencing plan. The Commission was required by §6085(f) to provide Appellant-Applicants with an opportunity to respond to those comments, and did so.

After giving Appellant-Applicants more than six months to provide additional information, it was reasonable for the Commission to close the hearing on May 27, 2005 and proceed to conclude its deliberations and issue its decision. The May 27, 2005 decision specifically noted that Appellant-Applicants had "failed to show how continued excavation of the site for gravel extraction can proceed without further damage and undue impact on the West Branch of the Passumpsic River and adjoining wetlands." If any delay occurred, it occurred during the time that the hearing was kept open to allow Appellant-Applicants to supplement or amend their application. The statute does not establish a time limit for this; on the contrary, it requires the hearing to be kept open to provide an opportunity to all parties to respond to the last evidence submitted. §6085(f). The time-limits for deliberations and the issuance of a decision do not begin to run until the hearing has been closed.

Even if the hearing was considered to have been closed as of the October 27, 2004 letter, there has been no showing that the District Commission failed to conclude deliberations as soon as 'reasonably practicable,' that is, whether it did or could have or should have deliberated on this application before May of 2005. In any event, the statute also does not establish a time limit between the closure of the hearing and the conclusion of deliberations. §6085(f).

Moreover, even if the deliberations were considered to have been concluded as of October 27, 2004, rather than on May 27, 2005, 10 V.S.A. §6085(f) does not specify any necessary consequence for failure to render a decision within twenty days after the completion of deliberations. The language in 10 V.S.A. §6085(f) must be contrasted with the deemed-approval remedy expressly provided by the legislature with regard to zoning

13

and subdivision review. See In re Appeal of McEwing Services, LLC, 2004 VT 53; and see, e.g., 24 V.S.A. §4464(b)(1) ( the appropriate municipal panel "shall adjourn the hearing and issue a decision within 45 days after the adjournment of the hearing, and failure of the panel to issue a decision within this period shall be deemed approval and shall be effective on the 46th day.)

As explained in In re Mullenstein, 148 Vt. 170, 173-74 (1987), it is generally well accepted that a statutory time period is not mandatory unless it both expressly requires the official action within a particular time period and specifies a consequence for failure to comply with the provision. In finding a time period not to be mandatory, the Court in Mullenstein contrasted the statutory provision at issue with the example of the zoning 'deemed approval' provision, noting that "where the Legislature has intended a time limit to be mandatory, it has clearly expressed that intent." 148 Vt. at 174.

In Act 250, as compared with the municipal zoning and subdivision permitting process, the legislature did not specify a consequence for failure to comply with the provision of 10 V.S.A. §6085(f). Nevertheless, the fact that the time limit in §6085(f) is not mandatory does not render it meaningless. If a District Commission failed to follow the requirements of that section through "undue and unwarranted delay," that delay might constitute grounds for reversal. See In re Wildlife Wonderland, Inc., 133 Vt. 507, 516 (1975); In re Spencer, 152 Vt. 330, 341 (1989). The court must determine whether the circumstances of a particular case constitute undue and unwarranted delay. Where such undue and unwarranted delay is present, the harm to the applicant must then be "balanced against the potential impact of the project on the environment and surrounding community." In re Spencer, 152 Vt. at 341.

As undue and unwarranted delay is not present, we do not reach a balancing of harm in this case. We note that, to reach that issue would require evidence from expert witnesses on the potential impact of the project on the environment, to determine whether

14

it would outweigh the harm to Appellant-Applicants from the seven-month delay, especially in the context of their (or their engineer's) own responsibility for the delay from the June 2002 Hearing Recess Order to and through the date of the October 27, 2004 letter.

Accordingly, based on the foregoing, Appellant-Applicants' Motion for Summary Judgment is DENIED, and summary judgment is GRANTED to the Land Use Panel of the Natural Resources Board that the application is not deemed to have been approved.  We will hold a telephone conference (see enclosed notice) to discuss scheduling the remaining issues in this appeal for trial.

Done at Berlin, Vermont, this 13th day of April, 2006.

_____
Merideth Wright
Environmental Judge